
02/26/2015

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **CHRISTOPHER C. SHARP** | § | |
| xxx-xx-2651 | § | Case No. 13-60612 |
| **and MELISSA A. SHARP** | § | |
| xxx-xx-8515 | § | |
| | § | |
| Debtors | § | Chapter 7 |

| | | |
|---|---|---|
| TEXAS CAPITAL BANK, N.A. | § | |
| | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| | § | Adversary No. 14-6002 |
| v. | § | |
| | § | |
| CHRISTOPHER C. SHARP | § | |
| and MELISSA A. SHARP | § | |
| | § | |
| Defendants | § | |

## MEMORANDUM OF DECISION
## GRANTING IN PART AND DENYING IN PART
## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT[1]

Now before the Court in the above-referenced adversary proceeding is the Plaintiff's Motion for Summary Judgment (the "Motion") filed by the Plaintiff, Texas Capital Bank, N.A. ("Plaintiff" or "TCB") on November 25, 2014. No response or objection to the Motion was filed by the Defendants, Christopher C. Sharp or Melissa A. Sharp

---

[1] This Memorandum of Decision is not designated for publication and shall not be considered as precedent, except under the respective doctrines of claim preclusion, issue preclusion, the law of the case or as other evidentiary doctrines applicable to the specific parties in this proceeding.

("Defendants" or "Debtor-Defendants"). Based upon the Court's consideration of the pleadings and the proper summary judgment evidence submitted by the parties, the Court concludes that the Plaintiff's Motion for Summary Judgment should be granted on the Plaintiff's §727(a)(3) claims against Christopher C. Sharp, which renders moot the alternative §523(a) claim against him. The Court further concludes that the Plaintiff's Motion must be denied in its entirety as to Melissa A. Sharp.[2]

## Factual and Procedural Background

This adversary proceeding was commenced by the Plaintiff, Texas Capital Bank, N.A., on January 30, 2014, alleging that the entry of a discharge order in favor of each of the Debtor-Defendants must be denied under 11 U.S.C. §727(a)(3) or, alternatively, that the particular debt owed to the Plaintiff, as guaranteed by each of the Defendants in April 2011, should be declared nondischargeable as a debt obtained by a materially false financial statement pursuant to 11 U.S.C. §523(a)(2)(B).

With regard to the disposition of summary judgment motions, the Court, in its scheduling order entered in this case on June 9, 2014, specifically incorporated Local District Court Rule CV-56.[3] That rule, in relevant part, directs a movant to include a

---

[2] This Court has jurisdiction to consider the complaint pursuant to 28 U.S.C. §1334 and 28 U.S.C. §157(a). The Court has the authority to enter a final judgment in this adversary proceeding since it statutorily constitutes a core proceeding as contemplated by 28 U.S.C. §157(b)(2)(I) and (J) and meets all constitutional standards for the proper exercise of full judicial power by this Court.

[3] *Scheduling Order Arising from Management Conference* entered in this case on June 9, 2014 [dkt #9].

Statement of Undisputed Material Facts and to support such a statement with "appropriate citations to proper summary judgment evidence."[4] It directs a respondent that any response "should be supported by appropriate citations to proper summary judgment evidence." With regard to the disposition of the motion, the rule states:

> (c) **Ruling**. In resolving the motion for summary judgment, the court will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent that such facts are controverted in the response filed in opposition to the motion, *as supported by proper summary judgment evidence*. The court will not scour the record in an attempt to determine whether the record contains an undesignated genuine issue of material fact for trial before entering summary judgment.[5]

Neither of the Debtor-Defendants filed any response to the Plaintiff's Motion for Summary Judgment. It is widely recognized that Fed. R. Civ. P. 56 "does not impose upon the [] court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003); *Brooks v. Firestone Polymers, LLC*, 2014 WL 5088657 at *1, n.1 (E.D. Tex., Oct. 8, 2014). As the Fifth Circuit has stated,

> In order to avoid summary judgment, the nonmovant must identify specific facts within the record that demonstrate the existence of a genuine issue of material fact. The party must also articulate the precise manner in which the submitted or identified evidence supports his or her claim. When evidence exists in the summary judgment record but the nonmovant *fails*

---

[4] "The phrase 'appropriate citations' means that any excerpted evidentiary materials that are attached to the motion or the response should be referred to by page and, if possible, by line." *Broussard v. Oryx Energy Co.*, 110 F.Supp.2d 532, 536 (E.D. Tex. 2000) (*citing* E. D. Tex. Local R. CV-56(d)).

[5] E.D. TEX. LOCAL R. CV–56(c) (emphasis added).

> *even to refer to it* in the response to the motion for summary judgment, that evidence is not properly before the district court.

*CQ, Inc. v. TXU Min. Co., L.P.*, 565 F.3d 268, 273 (5th Cir. 2009) (citations and quotations omitted)(emphasis in original).

Pursuant to the foregoing rule, the failure of each Debtor-Defendant to controvert the material facts set forth in the Plaintiff's motion and to present proper summary judgment evidence in support of any such controverted facts, the facts enumerated in the summary judgment motion and which are supported by admissible evidence "are admitted to exist without controversy." E.D. TEX. LOCAL R. CV–56(c). The following material facts, as established by the summary judgment evidence, are therefore so admitted:

1. TCB made a loan to C Sharp Cattle Co., LLC, a Texas limited liability company (the "LLC"), on or about April 12, 2011, as evidenced by a Promissory Note in the original principal amount of $255,000.00 (the "LLC Note").[6]

2. At that time, Mr. Sharp, on behalf of the LLC, executed and delivered to TCB an Agricultural Security Agreement ("LLC Security Agreement") securing the LLC Note and granting a first lien security interest in all equipment and livestock owned by the LLC ("Collateral").[7]

3. At that time, the individual Defendants, Christopher A. Sharp and Melissa A. Sharp each executed and delivered to TCB a separate Commercial Guaranty, whereby each of them unconditionally guaranteed payment of all monies due under the LLC Note (collectively, the "Personal Guarantees").[8]

4. TCB is the current owner and holder of the LLC Note, the LLC Security

---

[6] Blanton Decl. at p. 2, ¶ 3 & Ex. 1A.

[7] Blanton Decl. at p. 2, ¶ 4 & Ex. 1B.

[8] Blanton Decl. at p. 2, ¶ 5 & Ex. 1C.

Agreement, and the Personal Guarantees ("Loan Documents") and is entitled to recover all monies due and owing under the terms of the Loan Documents.[9]

5. As part of the application process relating to the LLC Note, Mr. Sharp submitted certain financial information to TCB on behalf of the LLC as one of its managing members. Such information included, but is not limited to, a written Financial Statement dated February 17, 2011 (the "LLC Financial Statement").[10]

6. Along with the LLC Financial Statement, Mr. Sharp submitted to TCB a personal financial statement (the "First Personal Financial Statement") on or about February 17, 2011 which he admittedly signed and which also carries what purports to be the signature of his spouse, Melissa A. Sharp.[11]

7. Mr. Sharp solely submitted a second personal financial statement to TCB on December 28, 2011.[12]

8. During the §341 meeting of creditors conducted in this case on December 13, 2013, Mr. Sharp testified that he maintained personal financial records and LLC records at his house and that he would provide such records and related documents and/or receipts to his accountant, Anita Kay Harden, "every year" for purposes of the preparation of separate annual tax returns for Defendants and the LLC.[13]

9. Mr. Sharp also testified at the §341 meeting that the accountant would return all documents to him upon completion of her annual accounting services.[14]

10. Mr. Sharp further testified at the §341 meeting that he currently had receipts of cattle sales by the LLC which he had effectuated.[15]

---

[9] Blanton Decl. at p. 2, ¶ 6.

[10] Blanton Decl. at p. 3, ¶ 7 & Ex. 1D.

[11] Blanton Decl. at p. 3, ¶ 8 & Ex. 1D at p. 3.

[12] *Id.*

[13] See Ex. 4 at 8:1 - 9:5.

[14] *Id.* at 8:24 - 9:1.

[15] *Id.* at 7:15 - 8:3.

11. Mr. Sharp specifically stated at the §341 meeting that he could provide related tax returns as "every receipt [relating to such cattle sales] is in there."[16]

12. Mr. Sharp testified at the §341 meeting that all records relating to the LLC bank account should be "at [Defendants'] house" or available from his accountant.[17]

13. On or about October 18, 2013, TCB filed its Motion for Examination of Mr. Sharp under Federal Rule of Bankruptcy Procedure 2004 ("2004 Exam") which included a request to him for production of documents ("First Request for Production").[18]

14. Mr. Sharp objected to the Rule 2004 motion and while it was pending with the Court, TCB amended its request for production of documents by Mr. Sharp on or about November 18, 2013.[19]

15. The Court subsequently ordered Mr. Sharp to appear for a Rule 2004 examination by TCB to be conducted on December 12, 2013 and to produce documents responsive to TCB's amended request by December 6, 2013.[20]

16. In response to the amended request for documents, and contrary to his testimony at the §341 Meeting regarding the availability of documents, Mr. Sharp produced only a limited amount of documents to TCB.[21]

17. Indeed, in response to the TCB request, Mr. Sharp failed to produce any documents relating to the LLC Financial Statement, either of his personal financial statements, or any records relating to any cattle sales initiated by the LLC or himself in an individual capacity.[22]

---

[16] *Id.* at 13:4-7.

[17] *Id.* at 20:21-25.

[18] *See* dkt. #17 in case no. 13-60612.

[19] *See* dkt. #34 in case no. 13-60612.

[20] *See* "Order Granting in Part and Denying in Part Motion for Examination of Christopher C. Sharp by Texas Capital Bank, N.A., Pursuant to Fed. R. Bankr. P. 2004" [dkt #38 in case no. 13-60612].

[21] Blanton Decl. at p. 3, ¶ 9.

[22] Blanton Decl. at p. 3, ¶ 9; Howard Decl. at p. 4, ¶ 12.

18. In his 2004 Exam, Mr. Sharp admitted that, particularly after the preparation of tax returns, he neither routinely maintained nor kept records relevant to his personal financial condition, the financial activities of his construction company, or the financial activities of the LLC.[23]

19. Mr. Sharp stated that any existing records relating to the financial statements or the cattle operation of the LLC "would have been burned up in the building" as a result of a fire in November of 2012.[24]

20. On or about September 26, 2014, TCB served in this adversary proceeding a "Request for Production of Documents Directed to C. Sharp." The deadline to respond to such request was October 29, 2014, and Mr. Sharp has wholly failed to respond with any production of documents in response to the request.[25]

21. Nevertheless, TCB was able to secure from third-party sources bank account statements of the Defendants and of the LLC.[26]

22. Part of such documentation included certain records of LLC cattle sales by Mr. Sharp at Tri-County Livestock Market, Inc. This documentation of Mr. Sharp's activities is materially inconsistent with his personal financial statements and the LLC tax returns for 2011 and 2012.[27]

23. For example, the LLC Financial Statement received by TCB on or about February 17, 2011, reported 141 head of cattle valued at $151,450.00.[28]

24. However, the sales receipts from Tri-County Livestock Market, Inc. reflect sales of only 121 head of cattle at a total net sales price of $63,932.00, and the sales as reported on the LLC tax returns for 2011 and 2012 total only $90,349.00.[29]

---

[23] Depo. C. Sharp at 35:24 -36:1; 65:17 - 66:3.

[24] *Id.* at 61:13-18.

[25] Blanton Decl. at p. 3, ¶ 10.

[26] *Id.* at p. 3, ¶ 11.

[27] *Id.* at p. 4, ¶¶ 11-12; Howard Decl. at pp. 4-5, ¶¶ 14- 15.

[28] *Id.*

[29] *Id.*

25. Although Mr. Sharp testified that all cattle sale proceeds received by the LLC were deposited into the LLC's account at Prosperity Bank, the related bank statements show otherwise.[30]

26. The accounting evidence reflects various withdrawals and transfers between the business account of the LLC and Mr. Sharp's individual bank account held with Prosperity Bank and confirms that Mr. Sharp, as a managing member of the LLC, failed to deposit all LLC cattle sales proceeds into the LLC bank account.[31]

27. Such proceeds from the LLC's sale of cattle constitute the cash collateral of TCB which secures the subject loan to the LLC. Mr. Sharp has failed to explain the disposition of those pledged cattle proceeds.[32]

28. According to Mr. Sharp, the cattle sales were only substantiated from "sale barn receipts" that he did not retain, unless some had been inadvertently retained by his accountant, but Mr. Sharp acknowledged that he had made no inquiry of his accountant as to whether any such receipts had been retained.[33]

29. Mr. Sharp testified during his 2004 Exam that he had sold all of the cattle which had secured the LLC Note by early 2012. This contradicts information contained in the 2012 LLC tax return which reflected remaining cattle inventory of of $77,000.00. Mr. Sharp has wholly failed to account for that discrepancy.[34]

30. Mr. Sharp also acknowledged during his 2004 Exam that he could not document in any way the valuations which he attributed to personally-owned cattle and equipment which were referenced in his First Personal Financial Statement, nor could he document the cattle valuations which he placed in the LLC Financial Statement.[35]

---

[30] Blanton Decl. at p. 4, ¶ 11; Howard Decl. at p. 5, ¶ 17.

[31] *Id.*

[32] Howard Decl. at p. 5, ¶ 17.

[33] Depo. C. Sharp at 64:7-25; 65:17-20.

[34] *Id.* at 68:7-11.

[35] *Id.* at 53:3-10; 54:3-12; 55:4-15. This exchange is illustrative of the position that Mr. Sharp consistently presented as to his absolute failure to produce any documentation:

31. The missing financial information regarding the cattle and farming equipment precludes the Plaintiff from ascertaining the financial condition of the businesses managed by Christopher Sharp or reconstructing the business transactions of the LLC or any cattle/farming activities conducted by Mr. Sharp in his individual capacity.[36]

32. Mr. Sharp stated that he did not understand the forms of financial statements or the requests for information relating to the various financial documents, and yet, despite his self-confessed ignorance, he repeatedly tendered financial documents to TCB in both the loan application process and the loan administration process in which he specifically referenced the existence of both LLC assets and personal assets at precise valuations.[37]

33. At the time of the LLC Note, the failure of Mr. Sharp to provide an accurate listing and valuation of both the LLC cattle and equipment, as well as his individually-owned cattle and equipment, resulted in a significant overstatement of the financial condition of the LLC, as well as his personal financial status.[38]

34. TCB relied on the erroneous asset valuations contained in the financial statements tendered by Mr. Sharp in its decision to extend the loan to the LLC.[39]

---

       Q (by Mr. O'Dens): That's a [personal] financial statement that you prepared for Texas Capital Bank?
       A (by Mr. Sharp): Right.
       Q: Did you produce any documents that you used in preparing the financial statement?
       A: No.
       Q: And is that because you claim that you don't have any of them?
       A: I guess I'm...did I produce any documents that provided this? Is that what you're saying?
       Q: Yes.
       A: No.
       Q: Why not?
       A: I ain't got them.
       Q: And why is it you don't have them?
       A: I don't know.
*Id.* at 53:8-21.

[36] Blanton Decl. at p. 4, ¶ 14; Howard Decl. at p. 5, ¶ 19.

[37] *Id.* at 53:3-10; 54:3-12; 55:4-25.

[38] Howard Decl. at p. 5, ¶ 18.

[39] Blanton Decl. at p. 4, ¶ 13.

The Plaintiff contends that the admitted facts are sufficient to establish that a Chapter 7 discharge should be denied to each of the Defendants or, alternatively, that the debt owed by each of the Defendants to TCB should be rendered nondischargeable as a debt procured by each of the Defendants through the use of a false financial statement under §523(a)(2)(B).

## Discussion

*Standard for Summary Judgment*

TCB brings its Motion for Summary Judgment in the adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7056. That rule incorporates Federal Rule of Civil Procedure 56 which provides that summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986), *quoting* FED. R. CIV. P. 56(c).

Any party seeking summary judgment always "bears the initial responsibility of informing the [] court of the basis for its motion." *Id.* at 323. As a movant, a party asserting that a fact cannot be genuinely disputed must support that assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B) showing that the materials cited do not establish the . . . presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

FED. R. CIV. P. 56(c)(1). "An issue is '*genuine'* if it is real and substantial, as opposed to merely formal, pretended, or a sham." *Bazan ex. rel. Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001) (emphasis in original). Material facts are those that could affect the outcome of the action or could allow a reasonable fact finder to find in favor of the non-moving party. *DIRECTV, Inc. v. Budden,* 420 F.3d 521, 529 (5th Cir. 2005).

The manner in which the necessary summary judgment showing can be made depends upon which party will bear the burden of persuasion at trial. As the party seeking a denial of discharge or, alternatively, a determination regarding the dischargeability of a debt, the Plaintiff bears the ultimate burden of proof at trial regarding its claims. As the party carrying the burden of persuasion at trial, the Plaintiff "must support its motion with credible evidence–using any of the materials specified in Rule 56(c)–that would entitle [them] to a directed verdict if not controverted at trial." *Celotex*, 477 U.S. at 331 (Brennan, J., dissenting); *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264–65 (5th Cir.1991), cert. denied, 502 U.S. 1059.

If the motion is supported by a *prima facie* showing that the moving party is entitled to judgment as a matter of law, a party opposing the motion may not rest upon the mere allegations or denials in its pleadings, but rather must demonstrate in specific responsive pleadings the existence of specific facts constituting a genuine issue of material fact for

which a trial is necessary. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248-49 (1986) (*citing* FED. R. CIV. P. 56(e)).

To determine whether summary judgment is appropriate, the record presented is viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, if the evidence demonstrating the need for trial "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50. Thus, a nonmovant must show more than a "mere disagreement" between the parties, *Calpetco 1981 v. Marshall Exploration, Inc.*, 989 F.2d 1408, 1413 (5th Cir. 1993), or that there is merely "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. Essentially, if a nonmovant fails to set forth specific facts that present a triable issue, its claims should not survive summary judgment. *Giles v. Gen. Elec. Co.,* 245 F.3d 474, 494 (5th Cir. 2001).

*§727(a)(3).*

Section 727(a)(3) of the Bankruptcy Code provides:

> The court shall grant the debtor a discharge unless —
>
> > the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transaction might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

Thus, a discharge is denied to an individual debtor under §727(a)(3) for a failure to

preserve documentation from which creditors can ascertain his financial condition and determine the nature of his financial dealings. This Court has previously noted that

> Individuals who desire the privilege of a discharge are required to provide their creditors with enough information to ascertain the debtor's financial condition and track his financial dealings with substantial accuracy for a reasonable period past to present. Section 727(a)(3) is intended to allow creditors and/or the trustee to examine the debtor's financial condition and determine what has passed through a debtor's hands. It serves as a limitation upon a debtor's right to a discharge because creditors are not required to risk having the debtor withhold or conceal assets under the cover of a chaotic or incomplete set of books or records.

*Neary v. Guillet (In re Guillet)*, 398 B.R. 869, 888 (Bankr. E.D. Tex. 2008) (citations and internal quotations omitted). *See also, Hughes v. Wells (In re Wells),* 426 B.R. 579, 594 (Bankr. N.D. Tex. 2006) [finding that, though an impeccable system of bookkeeping is not required, "creditors should not be required to speculate about the financial condition of the debtor or hunt for the debtor's financial information."]; *Stapelton v. Yanni (In re Yanni)*, 354 B.R. 708, 712 (Bankr. E.D. Pa. 2006) [noting that §727(a)(3) "ensures that creditors are supplied with dependable information on which they can rely in tracing a debtor's financial history."].

Under §727(a)(3), a plaintiff must prove that a debtor: (1) failed to keep and preserve financial records; and (2) that this failure prevented the plaintiff from ascertaining the debtor's financial condition. *Robertson v. Dennis (In re Dennis)*, 330 F.3d 696, 703 (5th Cir. 2003). Intent is not an element. "The premise of the subsection is that such financial

documents would have been available under normal circumstances except for the failure of the debtor to maintain or preserve them. If this evidentiary burden is sustained,

> . . . the burden shifts to the debtor to show the inadequacy is justified under all of the circumstances. The Fifth Circuit has never delineated a precise threshold beyond which a debtor becomes accountable for further recordkeeping. A debtor's financial records need not contain "full detail," but there should be written evidence of the debtor's financial condition.

*Guillet,* 398 B.R. at 889, citing *Cadlerock Joint Venture, L.P. v. Sauntry (In re Sauntry)*, 390 B.R. 848, 855 (Bankr. E.D. Tex. 2008) (citations and quotations omitted). "The financial records a debtor maintains should be appropriate and reasonable for a debtor of similar sophistication." *Wells,* 426 B.R. at 594. In sum, the Court must deny a discharge under §727(a)(3) if the Plaintiff can demonstrate that each Defendant failed to keep records or "to take such steps as ordinary fair dealing and common caution dictate to enable the creditors to learn what he did with his estate." *Randall v. Atkins (In re Atkins)*, 458 B.R. 858, 873 (Bankr. W.D. Tex. 2011).

The summary judgment evidence presented by the Plaintiff is sufficient to fulfill its burden to demonstrate under §727(a)(3) that Christopher Sharp failed to keep and preserve financial records with regard to the dissipation of the LLC cattle inventory as well as any cattle and equipment owned in his individual name and that such a failure prevented TCB from ascertaining his financial condition. *Dennis,* 330 F.3d at 703. The summary judgment evidence reveals that the cattle operations, whether conducted through

the auspices of the LLC or in his own name, were solely handled by Christopher Sharp. He was the sole cattleman in the Sharp family. He alone exercised the discretion to enlarge or retract the size of the cattle inventory. He alone could properly account for the acquisition or sale of equipment pertaining to the cattle operations. However, when an explanation of the disposition of the cattle or equipment was required, Mr. Sharp provided no such explanation and instead acknowledged his unilateral failure to maintain or preserve any level of business documentation regarding the assets upon which his cattle operations was based and from which the disposition of those assets might be reconstructed. The summary judgment record indicates that, beyond the chronological period necessary to create his tax returns, Mr. Sharp demonstrated an utter lack of concern regarding the maintenance of any paperwork that would document all of the varied transactions of his cattle operations and provide an explanation of how considerable business holdings could have simply vanished.

 Due to the insufficiency of the preserved and produced records from which to ascertain and track the financial condition of Christopher Sharp and/or his business transactions, the evidentiary burden shifts to that Debtor-Defendant to raise at least a genuine issue of material fact regarding the sufficiency of the records or a justification for the established insufficiency. However, as noted earlier, Mr. Sharp offers no such defense and offers no responsive summary judgment evidence regarding these issues. The Court does note a brief reference in Mr. Sharp's deposition testimony to a fire

occurring in an unspecified building in November 2012.[40]  Accordingly to his testimony, "what receipts I had would have been burned up in the building."[41]  However, there is no summary judgment evidence before the Court that Mr. Sharp had, in fact, retained any records in that building prior to its destruction.  In fact, he acknowledged that he sought only to tender the various receipts to his accountant each year for tax preparation work and did not subsequently seek the return of those documents once the required tax return was prepared.  He even refused to make any inquiry as to whether the accountant had retained any of his records for any tax year, even after the serial document requests had been issued by the Plaintiff.  Stated plainly, Mr. Sharp simply failed to offer any summary judgment evidence that any records were, in fact, in the building that burned.  Instead, he offers a contingency defense best described as — "it doesn't matter . . . if I had kept records, they would have been destroyed anyway."  Such speculation, in light of his admitted failure to preserve records prior to such time, is not sufficient to raise a defense of substantial justification under §727(a)(3).

Accordingly, far from being substantially justified in any failure to maintain sufficient records by which creditors could reconstruct and evaluate his financial transactions,[42] Mr. Sharp simply claims ignorance.  He offers no explanation for the

---

[40] Depo. C. Sharp at 61:5-18.

[41] *Id*. at 61:14-15.

[42] The inquiry regarding whether the inadequacy of records is justified under the circumstances should include an examination of: (1) the education, experience and sophistication of the debtor; (2) the volume of the debtor's business; (3) the complexity of the debtor's business; (4) the amount of credit

disposition of his business assets and that of his LLC, although he was primarily responsible for all decisions regarding the cattle inventory held by the LLC and in his own individual name and any business equipment related thereto. He simply leaves his creditors, including the Plaintiff, with little recourse other than to speculate about the truth regarding the liquidation of those assets for which he was singularly responsible.

Even if true (and ignoring the more logical deduction of greater culpability), Mr. Sharp's professed ignorance of transactions over which he maintained almost exclusive control and his failure to produce written documentation of such transactions disqualifies him from receiving a bankruptcy discharge. "[T]o qualify for a discharge in bankruptcy, a debtor is required to keep and produce written documentation of all such transactions. Records are not adequate if they do not provide enough information for the creditors or the trustee to ascertain the debtor's financial condition or to track his financial dealings with substantial completeness and accuracy for a reasonable period into the past." *Neary v. Hughes (In re Hughes)*, 353 B.R. 486, 500 (Bankr. N.D. Tex. 2006) (citations omitted). As Judge Jernigan further observed in *Hughes*,

> It has been said many times that receiving a discharge in bankruptcy is a privilege, not a right. In order to have entitlement to that privilege, certain basic financial record keeping by the debtor is of paramount importance. Record keeping is required for parties in interest to be able to verify the accuracy of the

---

extended to the debtor in his business; and (5) any other circumstances that should be considered in the interest of justice. *JPMorgan Chase Bank v. Hobbs (In re Hobbs)*, 333 B.R. 751, 758 (Bankr. N.D. Tex. 2005) (*quoting Meridian Bank v. Alten*, 958 F.2d 1226, 1231 (3d Cir. 1992)); *see also Mercantile Peninsula Bank v. French (In re French)*, 499 F.3d 345, 355-56 (4th Cir. 2007) and the unpublished decision in *Womble v. Pher Partners (In re Womble)*, 108 Fed. App'x. 993, 996 (5th Cir. 2004).

-17-

sworn Schedules and SOFAs and to be certain that the disclosures are materially accurate. If there are insufficient records, then there is no way to have a check on the integrity of the Schedules and SOFAs. The integrity of the bankruptcy process depends upon having some reasonable and reliable paper trail. The regrettable consequence of failure to have adequate records must be the denial of a discharge.

*Id.* at 502.

While it is well accepted that § 727 is to be construed liberally in favor of a debtor, the benefit of the discharge nevertheless comes with the condition of complete candor regarding financial transactions with the court and creditors. Because the Plaintiff has demonstrated that Christopher Sharp's failure to preserve adequate financial records impaired its efforts to ascertain his financial condition and the transactions relating thereto, and without evidence of any justification for such deficiency, such failure warrants the denial of Christopher Sharp's discharge pursuant to §727(a)(3). Thus, the Plaintiff's Motion for Summary Judgment shall be granted under 11 U.S.C. §727(a)(3) as to Debtor-Defendant, Christopher C. Sharp, and the entry of a discharge order in his favor shall be denied.[43]

As for the §727(a)(3) count against Melissa Sharp, the summary judgment record is simply too sparse to reach a similar conclusion, particularly as a matter of law. Though she is a joint debtor and though there is a community property presumption under Texas law regarding the assets that collateralized the TCB loan, the summary judgment evidence

---

[43] In light of this result, the Court need not address the Plaintiff's claims against Mr. Sharp under §523(a)(2)(B).

that warrants the denial of Christopher Sharp's discharge at this stage fails to reference any specific failure on Ms. Sharp's part. The Plaintiff has failed to tender any summary judgment evidence that Ms. Sharp, a registered nurse, had any involvement in the business operations of her husband or played any role in the apparent dissipation of any cattle/equipment assets. Indeed, other than the documentation itself, the Plaintiff has failed to tender any summary judgment evidence against Ms. Sharp at all. A plaintiff in this context must make a proper showing as against each individual debtor. The mere existence of the marital relationship does not determine a spouse's entitlement to discharge. *Guillet,* 398 B.R. at 873 n.2. In light of the failure of the summary judgment evidence to establish Ms. Sharp's culpability under §727(a)(3), the Plaintiff's Motion for Summary Judgment as against Debtor-Defendant, Melissa A. Sharp, must be denied.

*§523(a)(2)(B) Claim against Melissa A. Sharp.*

In light of the denial of summary judgment against Melissa Sharp under §727(a)(3), the Plaintiff's complaint seeking a determination of dischargeability against her under §523(a)(2)(B) remains outstanding.[44] As set forth in the preceding section, the Plaintiff

---

[44] Section 523(a)(2)(B) provides that :
A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt for money, property, or services, or an extension, renewal, or refinancing of credit, to the extent obtained by —
    -use of a statement in writing
    -that is materially false;
    -respecting the debtor's or an insider's financial condition;
    -on which the creditor to whom the debtor is liable for such money, property, services or credit reasonably relied; and
    -that the debtor caused to be made or published with intent to deceive.

tendered no summary judgment evidence at all regarding Ms. Sharp's knowledge, or conduct, or even that confirms that she actually executed the First Personal Financial Statement.  Given that lack of evidence, the Court concludes that the material facts admitted under the Plaintiff's motion are insufficient to establish that Ms. Sharp, with an intent to deceive TCB, made or published a materially false financial statement and that the Plaintiff is entitled to a judgment against her under that subsection as a matter of law.

## Conclusion

For the reasons set forth in this memorandum, the Court concludes that the Plaintiff, Texas Capital Bank, N.A., is entitled to summary judgment that the entry of a discharge order in favor of the Debtor-Defendant, Christopher C. Sharp, should be denied pursuant to 11 U.S.C. §727(a)(3).  The Court further concludes that the Plaintiff's motion for summary judgment against Debtor-Defendant, Melissa A. Sharp, should be denied in all respects.  An appropriate order will be entered which is consistent with this opinion.

Signed on 02/03/2015

THE HONORABLE BILL PARKER
UNITED STATES BANKRUPTCY JUDGE